**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NUVIA YESSENIA MARTINEZ-VENTURA, <br><br> *Petitioner*, <br><br> v. <br><br> JASON BENZEL, in his official capacity as Warden of the Elizabeth Contract Detention Facility; et al. <br><br> *Respondents*. | No. 26-cv-05983 (MEF) <br><br><br> **OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the allegations and procedural history of this case.

\* \* \*

The Petitioner[1] is held in the custody of federal immigration officials.  See Verified Petition for Writ of Habeas Corpus (ECF 1) ¶¶ 2, 14, 43.  She has now filed a bail motion, citing the Third Circuit's decision in Lucas v. Hadden, 790 F.2d 365 (3d Cir. 1986).  See Notice of Motion (ECF 19) at 1.

The motion is granted.

\* \* \*

In Lucas, the court of appeals held that "bail may be granted to a habeas petitioner prior to a ruling on the merits of the petition."  Lucas, 790 F.2d at 367.

Lucas, though, was a criminal case.  See id. at 365-66.  Does it apply here?

In an earlier litigation before the undersigned, federal executive branch officials took the position that, in the

---

[1]  Nuvia Yessenia Martinez-Ventura.

immigration-detention context, bail could not be afforded by a federal district judge sitting in habeas.  See Transcript of Oral Argument ("Khalil Transcript") at 13:10-25, 15:5-14, Khalil v. Joyce, No. 25-01963 (D.N.J. June 20, 2025) (ECF 330).  The argument went that federal district judges had been stripped by statute of any jurisdiction to admit an immigration detainee to bail.  See id. at 13:10-25.

But in response, the undersigned held that bail from a federal district judge is potentially available --- even where the detention in question flows from the immigration laws, not from the criminal ones.  See id. at 15:15-17:10, 19:11-14, 20:6-23:11 (explaining why).

Other district judges of this Court have taken roughly this same approach.  See, e.g., Rizo Ojeda v. Soto, 2026 WL 1724657, at *4 (D.N.J. June 15, 2026); Guzman v. Bondi, 2026 WL 594091, at *1 n.1 (D.N.J. Mar. 3, 2026).

And at this point, federal executive branch officials seem to agree --- suggesting here, in this case, that bail may possibly be on the table, even though this is an immigration-detention habeas case, not a criminal-detention habeas case.  See Response to Petitioner's Motion for Release and TRO ("Respondents' Response") (ECF 26) at 6; accord Memorandum of Law in Support of Petitioner's Motion for Interim Release and Temporary Restraining Order ("Motion for Interim Release") (ECF 19-1) at 1, 5-7.

Bottom line: the Court holds that a person can sometimes be bailed by a federal habeas court --- not just in the criminal-detention context, but also in the immigration-detention context.

\*　　\*　　\*

What does it take for an immigration detainee to make bail?

In an earlier litigation before the undersigned, federal executive branch officials argued that, under Lucas, bail was only appropriate when each of two boxes was checked.  See Khalil Transcript at 24:19-25:11.

First, a showing was required by the habeas petitioner of a solid-enough chance of his winning on the ultimate merits of his case.  And second, a showing was needed from the petitioner that

something extra was in the mix --- like, say, a very serious medical issue.  See id.

But when the issue was teed up in the earlier litigation, the undersigned explained that while federal executive branch officials likely had the law right as to some other circuits --- the Third Circuit had taken its own tack.   See id. at 25:12-26:7, 27:8-29:13, 30:14-15, 30:23-31:4.

Per the Third Circuit, this Court explained, "extraordinary circumstances" is the governing bail standard --- and that is a flexible standard, with no necessary likelihood-of-success-on-the-merits component built into it.  See id.

The Court has stuck to its previously-stated view.

For example, around 8 weeks ago the Court granted habeas relief to a woman who was in immigration custody, but whose life was in danger --- because the relevant New Jersey detention facility did not have certain important medication on hand.  See Najera-Rodriguez v. Soto, 2026 WL 1123570, at *1 (D.N.J. Apr. 18, 2026).  The Court bailed the woman on an urgent basis and for the sole purpose of her receiving the medicine from a doctor, see id. --- and without any need on her part to establish that she would ultimately prevail on the merits of her claims.

Here, federal executive branch officials seem to have broadly accepted the Court's approach.

They have indicated that "[u]nder Lucas, a petitioner must '(1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both.'"  Respondents' Response at 4 (quoting Lucas, 790 F.2d at 367) (emphasis added).  Per the federal officials here, "'[v]ery few cases have presented extraordinary circumstances [warranting immediate interim bail], and those that have seem to be limited to situations involving poor health or the impending completion of the prisoner's sentence.'"  Id. at 5 (quoting Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992)).

A merits showing or "exceptional circumstances" (often involving health concerns).  "Or" not "and."  (1) or (2), no need for both.

*       *       *

3

"Exceptional circumstances" are necessarily rare.  Is the standard met here?  Yes, the Court concludes.

Per the materials that have been submitted to the Court, the Petitioner's twelve-year-old son is diabetic, legally blind, and has limited cognitive abilities.  See Motion for Interim Release at 1, 3; see also Motion for Interim Release, Exhibit A ("Report of Suspected Child Abuse or Maltreatment") (19-3) at 2.

As a result, he is said to be "limit[ed in] his ability to manage his diabetes and other daily needs."  Motion for Interim Release, Exhibit C (ECF 19-5); Motion for Interim Release at 3.

And the Petitioner represents that she is her son's "sole living parent and capable caregiver."  Motion for Interim Release at 1.

Therefore, the Petitioner states, her son's health has deteriorated while she has been in the custody of immigration officials.  See Motion for Interim Release at 3, 5-6.  He has been hospitalized, id. at 3, shown up at school "physically ill," see Report of Suspected Child Abuse or Maltreatment at 2, and has not received proper emergency medical care.  See id.; Motion for Interim Release, Exhibit B (ECF 19-4) at 2.

According to an exhibit submitted by the Petitioner, a New York state social worker has now warned that "[w]ithout proper supervision of his diabetes, which has already affected his vision, we are extremely fearful for his wellbeing."  Report of Suspected Child Abuse or Maltreatment at 1-2.

Add to this the recent wrapping up of the school year, and another everyday backstop is peeled away --- without the school nurse to provide a hand with medication, the Petitioner argues that there will not be the "proper supervision" that, per the referenced state-agency report, is necessary for her son.  See Motion for Interim Release at 1, 4.

*    *    *

In short, the Petitioner's current detention is creating serious medical danger for her son.

The Respondents do not argue that any of this is factually wrong.  Rather, they contend that it is not enough.  Per the Respondents, they do "not [mean] to say that the risks of [the Petitioner's son] being hospitalized again . . . are not serious circumstances."  Respondents' Response at 6.  Rather, the "Petitioner has not yet shown . . . that the circumstances, at

4

this time, are so 'extraordinary'" as to require interim release.  See id.

The Respondents contrast this case with Alfonso v. Soto, 2025 WL 3187438 (D.N.J. Nov. 14, 2025).  See Respondents' Response at 5-6 (explaining that Alfonso is "instructive here," but "distinguishable").

In Alfonso, as in this case, the petitioner was said to be "the sole-caregiver to his [child]"; there, the child was dying of leukemia.  See Alfonso, 2025 WL 3187438, at *1-2.  Because the petitioner's daughter only had days or weeks to live, the Alfonso court concluded that there were "extraordinary circumstances that justify release on bail pending determination of [the habeas] petition."  Id. at *2.

Per the Respondents, this case is not far enough along to merit comparison to Alfonso.  As they see things, it is too early to know whether the Petitioner's son's health will suffer enough "without school guardrails" to clear the "extraordinary circumstances" bar.  See Respondents' Response at 6.

But the Respondents' argument rests on the assumption that Alfonso sets the floor here --- such that release under Lucas can be warranted only in cases that are at least as severe as Alfonso was.  But there is no basis for that assumption.  A situation can be less severe than Alfonso --- and still be severe enough to warrant bail relief.

More basically, while there is not much appellate caselaw in this area, the Respondents' argument is at odds with what caselaw there is.

Look to the Third Circuit's decision in Johnston v. Marsh, 277 F.2d 528 (3d Cir. 1955) --- a foundational ruling that was favorably cited in Lucas as having initially recognized "the inherent power of a federal habeas tribunal to admit a . . . petitioner to bail pending a ruling on the claims asserted in the petition."  Lucas, 790 F.2d at 366-67.

In Johnston, the district court bailed a habeas petitioner who alleged that, "as an advanced diabetic, [he] was, under conditions of confinement, rapidly progressing toward total blindness."  Johnston, 227 F.2d at 529.

The Third Circuit denied writs of prohibition and mandamus, concluding that the district court had "act[ed] within its jurisdiction."  Id. at 531.

And later (though in dicta) the Third Circuit has twice suggested that the district court had it right in Johnston on the merits of the interim release question.  See Lucas, 790 F.2d at 367 ("the result[] in Johnston . . . [is] consistent with the application of an 'extraordinary circumstances' test"); Landano, 970 F.2d at 1239 ("In Johnston . . . we found that bail was warranted because the prisoner was 'an advanced diabetic [who] was, under conditions of confinement, rapidly progressing toward total blindness.'") (quoting Johnston, 227 F.2d at 529).

The Petitioner's son's medical situation here is closely similar to the medical situation on the table in Johnston.

As in Johnston, this case implicates the dangers posed by "advanced diabet[es]."  Compare Johnston, 227 F.2d at 529, with Motion for Interim Release at 1, 4-6.  Indeed, the Petitioner's son's medical condition here is sufficiently "advanced" that "his diabetes . . . has already affected his vision."  Report of Suspected Child Abuse or Maltreatment at 2.

And like Johnston, this case, at its core, is about assertions that such serious medical conditions are "rapidly progressing." See id. at 3, 5-6.

"Very few cases have presented extraordinary circumstances[.]" Landano, 970 F.2d at 1239.  But this case, particularly given its factual similarity to Johnston, is one of those.

*    *    *

In light of the above, the Court will bail the Petitioner, subject to conditions.  Cf. Johnston, 227 F.2d at 529 (noting that the district judge "conditioned the admission to bail upon [the Petitioner] going to and remaining in a private hospital"); Landano, 970 F.2d at 1239 (highlighting that Johnston "did not place the prisoner at liberty but instead released him to a hospital for immediate treatment").

The conditions are as follows.

First, the Petitioner shall be released from the custody of federal immigration officials, and shall be required to go directly to her home.  She must remain inside her home until or unless there is a contrary order from this Court --- except that

she may leave her home, without seeking pre-approval, for the purposes of (1) picking up groceries and other essentials, and (2) providing appropriate medical care for herself and her children, including taking her children directly to and from medical appointments and picking up prescriptions.

Second, the Respondents shall be permitted to take reasonable steps to ensure that the Petitioner complies with the above condition --- such as requiring that she wear an ankle bracelet or that other, comparable location-monitoring steps be taken.

Third, the Court's release order shall become effective only on July 1 at noon.  This will afford the Respondents an opportunity to pursue any appellate remedies they may wish to, and to arrange for an ankle bracelet (if that is the route they choose to go).

A final point.

It is clear that the Petitioner is a low flight risk --- given her son's medical situation, and the above-imposed conditions.

In addition, the Respondents have not presented the Court with any indication that the Petitioner has any criminal convictions or arrests, or that she is otherwise a danger to the community.[2] Should the Respondents present the Court with anything along those lines, the Court will be prepared to address the impact of any such information before the July 1 deadline.

IT IS on this 30th day of June, 2026, **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[2]  To the contrary, as noted in the text, the Respondents position is that she might have a winning interim release motion at some point in the future --- just not now.  See Respondents' Response at 6.

7